We're anxious to hear your arguments, and the first case on for argument this morning is Lueck, I think, isn't it? It is, sir. Okay. May it please the Court, my name and opposing counsel. My name is John Watkins, and I represent the Honorable Judge Lueck. Judge Lueck's lawsuit arises from a ruling made by the Standing Committee in reference to Canon 5A3-D3. That ruling was incorrect and, most importantly, violated Judge Lueck's First Amendment right of free speech. This case has ramifications far beyond Judge Lueck. It has ramifications for any judicial candidate who runs in the State of Nevada. You did get our argument order. I did. The five cases, and I'm prepared to deal with the Rooker-Feldrin and those five cases. Might as well do so now. That's probably the first hurdle that we need to address. The five cases that the Honorable Court gave me, all of those cases are distinguishable from what we have in the Standing Committee. When we're talking about the Standing Committee, it's very important to look at the nature and the effect of that proceeding. Okay? That proceeding does not prevent this Court from review because, under Rooker-Feldrin, it is not a court, nor is it an equivalent of a court. And we'll analyze those concepts. Haven't we held that a barred disciplinary committee acting under the aegis of a State Supreme Court, that Rooker-Feldrin does apply to their determinations? Justice Hawkins, a barred disciplinary decision is different than this Standing Committee. For example, in the State of Nevada, we have a judicial commission that deals with bar complaints. Those proceedings are, in fact, quote, equivalent to a court. Due process takes hold in that proceeding. What we have here is a Standing Committee that is nothing more than that. It's a Standing Committee. It is nothing more than an inquisitorial or an advisory body. But if I can address those five cases, they sum up as follows. If we're going to have the Rooker-Feldrin doctrine preclude a First Amendment right of free speech, again ---- Whoa, whoa, whoa. Time out. That's not the natural sequence of events if Rooker-Feldrin applies, is it? If Rooker-Feldrin applies, we don't get to the merits of the case. Subject matter jurisdiction, we get to go home. Not here you don't. The whole purpose of Rooker-Feldrin is to leave the State's proceedings to the State and not to bring it over here to federal court. In this case, there was no such thing as a State proceeding because we had no right to have an appeal. There was no court appeal. And that's those five cases that you give me to look at. Every one of those cases allows for court review. This Standing Committee does not allow for any review. The Standing Committee makes a decision, a ruling. That's it. Didn't you get Mendemes in the State court? I don't believe that you could get it. I don't believe that the court would entertain it because the Standing Committee is nothing more than an advisory committee. It is not deemed to be a court or a judicial proceedings. As you're well aware, the panel consists of five people, two lawyers and two laypeople and one sitting judge that doesn't vote. The advisory committee, why didn't your client say, thank you for your advice, I intend to leave the advertisement stand? He actually did not comply with their order completely. Sort of partially. Yes. He said I'm not going to do it. And this is another thing that shows that the Standing Committee is not a court or an equivalent thereof. It has no power to enforce? None. None. What's his injury exactly, then? His injury is that he's running for a campaign right now, and I'm sure the opponent is going to say, look, he was given a ruling that was adverse to him by this Standing Committee. But it would be advisory. Can't he simply explain that it's advisory? Why should he have to when he has a First Amendment right to make the statements that he made in this case? I can't believe that he has a First Amendment right to say something in an administrative setting as a conviction. Absolutely. Because the judicial. He has a First Amendment right to deceive? He didn't deceive anybody, Justice Roberts. He referred to the results of an administrative proceeding that is a recommendation of, as you've just described, as a conviction. That's not a false statement? The judicial commission is different than the Standing Committee. The judicial commission acts as a court in the State of Nevada. It applies and has due process. Does the word conviction appear anywhere in the determinations of that body or their rules or the statutes authorizing their creation? That does not. Do you have a yes or no? The word conviction does not. In fact, it doesn't apply. It would be like. No, it does apply. It does apply. You have formal charges. You have a prosecuting attorney. You have violations of. False is not a conviction, is it? It is a conviction. It absolutely is a conviction. And that's splitting hairs to hold that against Judge Luke, to say that he used the word conviction at a proceeding that is a prosecution, uses prosecutor, uses formal charges, and a violation. And that's. And to pick at Judge Luke and say that he used the word convicted and, therefore, he was doing something that was a lie is inappropriate and violates his First Amendment rights. Mr. Watkins, what is the difference between the actions of the judicial commission that dealt with Judge Fine and an impeachment proceeding? Was she impeached? No. No. What would have been required to have constituted an impeachment? I'm not real sure. But she was going to be removed from office, right? When. The Nevada Constitution provides that judicial officers can be removed from office. Correct. That's the commission. That's the one that acts as a court. And it's in the Constitution of the state of Nevada, by the way. The standing committee is not. Right. And what does the Nevada Constitution provide about impeachment? I'm not sure. Okay. Isn't that how judicial officers get removed? No. No. The judicial officers get removed through the judicial commission that hears the violations and then they make a determination. So they act as a court. You get due process. You have a right to have an attorney. It's an open hearing. You submit briefs. You know, it's a try. Unlike in, by comparison to the standing committee, it's a closed hearing. You have lay people making decisions on constitutional issues. But the standing committee is the committee that reviewed Judge Luke. Yes. The judicial commission is the one that reviewed Judge Fine. Right. And it's the Judge Fine proceeding that Judge Luke has characterized as a conviction. Yes. And that proceeding resulted in her removal from office. It did. Okay. What is the difference between the judicial commission's proceeding and an impeachment under the Nevada Constitution? I'm not sure about it. How can she be removed from office under a proceeding unless it's authorized by the Nevada Constitution, which, if you've got it, is in Article 7, Sections 1 and 2 of the Nevada Constitution? Okay. I'm a little unclear as to, I wasn't prepared to argue the propriety of Grant Fine. The reason I asked, Mr. Watkins, is that it might have helped your case here, because the Nevada Constitution. I'll take all the help I can get, but. The Nevada Constitution refers to one who has been impeached as one who is convicted. So you can be convicted and removed from office under the Nevada Constitution, and that would be a conviction, even though it does not result in criminal sanctions. Correct. So I'm very curious as to what the difference is between an impeachment proceeding, which would have to be, that results in removal, would have to be a conviction, and what happened to Judge Fine? She wasn't impeached. She was actually convicted. She went through the commission and were formal charges. Frank Kramen was the special prosecutor. So she was convicted, according to your definition. And, again, the word conviction doesn't necessarily mean criminal conviction. And this is the problem with this ad hoc committee, the standing committee. There's no right to review. They make a decision. It's lay people making determinations on constitutional issues and what they say is final in the story. But I don't get what's happened to the judge as a result of this finding. It's simply their opinion about the propriety of the ad. No disciplinary action is taken against him. He's not fined. What's the harm? Well, it allows a candidate against him to bring up that he has been sanctioned, had to remove something from his ad, that he did something wrong. Well, so what? I mean, if their opinion it's not a nice ad, they can say it's not a nice ad. He can say it is a good ad. You know, it's a free country. Well, but it goes to his First Amendment right of free speech. He shouldn't have to do that. And he shouldn't have to be answering to someone making a claim against him that he did something wrong. They said he lied. That's what they said. They said that Judge Luke lied. They said that there's no jury here. I don't know if the press is here or not. You're talking to the three of us. Okay. Just tone it down a little bit. Thank you. You're welcome. Did you want to save some time for rebuttal? You have about five minutes left. I'd like to save five minutes. Okay. I've got 16 to talk, though. Seconds. And I'll take it. But it's very important, again, that we keep in mind the difference between the judicial commission and the standing committee. The standing committee is not a court or is equivalent. Again, it's closed hearings. There's no proceedings for purposes of any appeal. There's no right to an appeal. And on page 25 of my opponent's brief, they say that there's no right to an appeal. Right. But the commission can suspend a judge. They can take disciplinary action against a judge. They can remove a judge. The standing committee can't do any of that stuff. Advisory. It's just their opinion. And since it's an advisory, Rooker-Feldman doesn't apply. An advisory to whom? I'm sorry? Advisory to whom? To Judge Luke? Is it advising somebody? Is it advising the state supreme court so that there could be further proceedings against Judge Luke? Is it sort of a prosecutorial recommendation to some other body? Well, it does say that they could hand him over to the commission or to the state bar. Now, the commission wouldn't have any jurisdiction over Judge Luke until he was actually elected to office. Is that correct? That's correct. It's only a judge. That's correct. And the state bar could take action. What kind of action? They could say that Judge Luke lied and lawyers can't lie, and therefore, you know, you could be suspended. You could be disbarred, et cetera. And that would be a judgment by the state bar that could be appealed to the Nevada supreme court? It could. The judicial commission and the state bar proceedings all are appealable. Due process was not given. And in order to have, quote, the Rooker-Feldman apply, you have to have due process, which is a full and fair opportunity to litigate. Judge Luke didn't have that. This is not a litigating body. This is merely advisory. And if you look in the excerpt of our record, you'll see that when they send the letter out to him, it says that we're going to evaluate the complaint in this case. It is not the type of body that Rooker-Feldman would prevent this Court from deciding. And I'll reserve the rest of my time. Thank you. Thank you, counsel. Ms. Simonelli. May it please the Court, my name is Lisa Simonelli. With me is Robert McPeak. We're with the law firm of Kummer, Kempfer, Bonner & Renshaw in Las Vegas, and we represent the standing committee. Despite his attempts to mask it in his brief or the argument before you today, what you have in front of you is an impermissible de facto appeal from the fact-finding determinations of the standing committee. As he stood here before you today, one of the first things that he said in oral argument was the fact that the ruling of the standing committee was incorrect. That is perhaps the hallmark of a Rooker-Feldman issue. That's why Rooker-Feldman is implicated, and that is why this Court should deny jurisdiction. Your opponent argues that this committee is different than the disciplinary committee in a couple of respects that he argues are important. One is that their findings are just sort of advisory, and the second is that there's no avenue of review by the State supreme court. What's your response? I'll address the second issue first, which is that there's no avenue of review by the supreme court. First and foremost, although the standing committee rules themselves do not provide for or give guidance to a party as to how to take an appeal, that it doesn't actually bar an appeal. So, you know, it cannot necessarily be said that there is no avenue of appeal. The Nevada supreme court hears writs on a number of different issues, including First Amendment prior restraint issues. And, I mean, there's absolutely no reason why they could not have directly appealed. Do you have a recorded case where the Nevada supreme court undertook review of this particular committee? No, we don't, Your Honor. And one of the problems with that is because this is actually one of the – that committee was established the year that Judge Luke was disciplined by that committee. So the commission has only been in existence for a short period of time. To your knowledge, has anyone ever attempted to gain review of a finding or recommendation of this committee? To my knowledge, with the exception of Judge Luke and the two other judges that filed this Federal lawsuit, no one else has challenged these determinations by the standing committee to date. To obtain review, would one have to seek an extraordinary writ of some kind? Yes, they would, Your Honor. And the other issue that I would raise is in the Buckley case that you provided for in your June 3rd order, which stands for the proposition that in these judicial discipline-type cases, if there is no avenue of review, in essence, if that commission's decision is final, then it's considered the highest – the decision of the highest court of the State, and they can directly appeal to the United States supreme court. We believe that that situation is far more analogous to the situation at hand than, you know, than his attempts to demonstrate that. So are you suggesting that Judge Luke's only remedy was to file a writ of certiorari in the U.S. supreme court from the standing committee? No, Your Honor. What I'm saying is, is that I believe that he had a right to ask for an extraordinary writ from the Nevada supreme court. It might even be possible for him to challenge it in district court. There is no – it doesn't – the standing committee rules do not say you cannot take an appeal from this. So he could – he could seek his remedies in other places within the State court system. It might have been – it might have been useful if the law had provided that, because then it would make the standing committee's judgments under ordinary administrative rules the judgment of the Nevada supreme court or of the State bar. So let's go back to the question that we asked Mr. Watkins. What is – what is the judgment of the standing committee? Is it purely advisory? It's purely advisory, but as he pointed out towards the end of his argument, to the extent that they want to – that they want to pursue it, if he doesn't comply with it and he wants to take it – they want to take it to a disciplinary level, then they can, in fact, refer it to the Commission on Judicial Discipline or they could refer it to the State bar. And then you're off – then you're off and running. Then you've got a regular hearing and appeal procedures and everything else, right? Yes, Your Honor. Is the – are the findings of the standing committee binding on the judicial committee? The commission – in other words, presumably Judge Luke would have an opportunity to bring in – to bring in witnesses and we get cross-examination and a lot of process at that point. Is that correct? We would take – we would take the position that the – that the fact-finding determinations of the standing committee made, even though they may be an advisory body in some respects, that those would be litigated and determined and that they would not be re-reviewed by the – by the judicial committee. So there would not be a de novo proceeding in the – in the commission. They would – they would have to adopt or have to work from the findings of the standing committee. Yes, Your Honor. So at that point, then, those findings are binding on the – on the commission. So they do have legal consequences. Yes, Your Honor. Are you sure that that's correct, what you just told Judge Bybee, that whatever findings made by the advisory committee would then be binding on the discipline commission? We believe that the – that the manner in which that they – that they determined the facts would be binding. However, the application of the facts to the canon obviously would be up for – would be up for review. Is there any authority for that, or is that just Simonelli on Nevada procedure? That's Simonelli on Nevada procedure, Your Honor, because this is sort of a unique – this is a unique proceeding that hasn't been – has not yet been reviewed. I'm not familiar with – excuse me. I'm not familiar with the Nevada procedures. In Arizona, there's an advisory committee that gives advice to Arizona judges, and then there's a separate disciplinary commission. The two things are – are really unrelated. A judge can get advice, and if he or she follows the advice, it can be used as a defense if there's some other disciplinary proceeding down the road. But the two are not – not connected in any kind of, you know, sort of collateral estoppel sort of way. I'm a little surprised to hear you say that the findings by the group that gives advice would be binding on the group that would conduct the trial. Well, I – in my opinion, and, you know, take it for what it's worth, I do not believe that the standing committee was created. I mean, they do give advisory opinions on particular issues and provide those advisory opinions to the Supreme Court, and those are considered not binding. But as far as their fact-finding determinations, I mean, we consider this to be a judicial proceeding like any other. We would take them. How do they enforce their determinations? Like I said, the enforcement simply is that they publish the decisions, so they're available for review. People know. Now, let's say hypothetically in this case that Judge or Candidate Luke, depending on the timing, had said – Candidate Luke, I suppose, had said, you're just advisory. I hear your advice. I decline to follow it, and proceeded to run the ads. I take it the committee does not have the power to go into court and enforce its determination. It's my impression that they – what they would be able to do would be to forward it on for additional discipline based on his failure to follow – to comply with the – not even the recommendations, but the findings of the standing committee. And that would proceed through the disciplinary process? Yes. Where there is a clear right of review by the Nevada Supreme Court? Yes. Going back to the Rooker-Feldman argument before you, this – the Ninth Circuit has had the opportunity to apply Rooker-Feldman in a variety of different cases, particularly those that deal with as-applied constitutional challenges like the one that he's making, as well as in situations where you had a board of bar examiners and a person was seeking a review of the board of bar examiners' decision. You have not yet, to the best of my knowledge, had the opportunity to grapple with the issue of Rooker-Feldman in a judicial discipline type setting. But this Court has a lot of guidance from the lower Federal courts as well as courts of a number of different circuits that all have established almost a general rule, which is when you have a fact-finding type committee or a commission on judicial discipline that is either an arm or agent of the Supreme Court or a decision by the Supreme Court that provides for judicial discipline and the appellant is seeking relief from or review from the correctness of that decision, then Rooker-Feldman bars the jurisdiction of this Court. That's basically the scenario that we have before us today. And the only two exceptions to that scenario, or that general rule, if you will, are when the appellant is making a general constitutional challenge or where the appellant is arguing that the entity is not an arm or agent of the Supreme Court. Because I think that the second issue is a little bit more important than the first, because I think we can concede that he's not making a general constitutional challenge, his challenge is one that's very fact-laden and deals with the application of the canon to his particular situation, I would say that in the cases that were cited by the Court in its June 3rd order as well as the cases cited by the standing committee in its briefs, the standing committee clearly is an arm or agent of the Nevada Supreme Court. First and foremost, it was created under the rules of the Nevada Supreme Court. It has 28 members, 12 of which are attorneys, which are appointed by the State Bar, which is an arm or agent of the Supreme Court. It's under the exclusive jurisdiction of the Supreme Court. There are four judges which are appointed directly by the Supreme Court, and every district and senior judge in the State of Nevada is a member of the Unfair Election Practices Committee. In addition, there are 12 non-attorneys which are appointed by the governor to the governor does not make one or all of those appointments, it falls back to the State Bar and the Supreme Court of Nevada to appoint those members to the panel on the standing committee. The committee officers are all part of the Nevada Commission on Judicial Discipline, and the commission, as conceded by Mr. Watkins, is a part of the judicial department. The procedures, the standing committee rules have all been promulgated by the Nevada Supreme Court, and the members of the standing committee, in making these judicial determinations in these hearings on judicial discipline and on election practices, enjoy complete immunity from their decisions, which tends to indicate that, again, that they're acting in a judicial capacity when they are, in fact, making these decisions. Mr. Imanelli, do you know whether Nevada's model with a standing committee and a judicial commission, whether that model was adopted from any other state? To be honest with you, Judge Bidey, I do not know that. But I would say that in looking at the cases that were cited by the Court in its June 3rd order, the Nevada standing commission is clearly much more like the judicial discipline body that existed in the Thomas case than, for example, the one that existed in the Scott case, which, to my knowledge, in the cases that we've looked at on this judicial discipline issue, it's the only case that stands for the proposition that when, you know, a state has a very strong interest in regulating its judiciary, states have very strong comity issues in wanting to take care of and make sure that they're the ones that are, you know, keeping their judiciary, the integrity of their judiciary. And, I mean, in that sense there are constraints on that. Most definitely, Your Honor. There are constraints on that. As the Supreme Court has told us. Yes. But in the Scott case, it was the legislature that had set up the body, and the members were people that were appointed by the legislature. They did not have a judge. It was not a judicial arm of the Supreme Court, and that's what the distinction is in the Scott case. This is the standing commission is far more like the entities that you saw in the Allstate case, the Thomas case, the LaCava case, all of which did not require an appeal to the Supreme Court and did not necessarily involve – necessarily have to have a decision from a court itself. If, indeed, the Court does not find that the Rooker-Feldman doctrine is applicable in this instance, I think it's important for us to look at the canon that's at issue in this litigation, because this is not a pledges and promises canon. This is not a canon that deals with – there's not a lot of dispute within the circuits about whether or not this canon is constitutional. In fact, here, I mean, he's basically conceded that this is not protected speech. Knowing this representation is not protected speech. What was the misrepresentation? The misrepresentation, Your Honor, was his use of the word conviction. Right. But conviction appears in the Nevada Constitution in connection with the removal of judicial officers. Judge Fine was removed from office. Why would it be inappropriate to use the word convicted when that word appears in the Nevada Constitution in that same context? Well, I guess most importantly would be that she – that that was not the procedure by which she was removed from office. If she had, in fact, been impeached, then I don't know that we would necessarily make the distinction. And what's the difference between a formal impeachment of the Nevada Constitution and the proceeding under the Judicial Commission? I don't know. I don't know the answer to that, just as Mr. Watkins did not know the answer to that. But I would argue to you that it's obviously a distinct procedure. But the word – Or it would have been – it would have been outlined as an impeachment proceeding. But the word convicted does have a meaning outside of criminal law. And it does have – does have meaning with respect to the removal of judicial officer, removal from office. I understand your argument. And, you know, just as if – just as in a case in State court that would go before a jury, there can be different interpretations of facts. And that brings us back to the same issue, which is that he's basically asking you to substitute your judgment for the judgment of Nevada's Judicial Commission or the Standing Committee on Judicial Ethics and Campaign Practices in determining whether or not that was a knowing misrepresentation. And under the body of cases and the general Rooker-Feldman case law on these issues, that's something that's impermissible for this Court to do. And, again, as I was arguing before, I mean, we believe that even if you find that this is an administrative agency, he still had a right – he still had a right of review to the Nevada Supreme Court. He still had a right of review to the United States Supreme Court. The fact that he chose to circumvent that and not take it any further within the State proceedings, it basically means that in these types of proceedings, when the bell rings and they make a decision, he can then come to Federal court and you're going to be sitting as basically the appellate court on, you know, Nevada's regulation of its judiciary. Sotomayor, let's say that Mr. Luke, Judge Luke, wanted to seek review by the Nevada Supreme Court of the recommendation findings of the committee. How much time does – is there a time limit in which he has to apply? Well, perhaps the biggest problem that we have – Can I get a yes or no to that? A time limit for when he can go to seek a – seek an appeal? Yes. I mean, does he have 30 days? Does he have 60 days? Does he have a year? I guess we would just have to see what the statute of limitations would be, but I would assume that it would not be a, you know, a 30-day or a 60-day type of procedure. Where would Mr. Luke or his counsel go to find out how much time he has to file a timely petition with the Nevada Supreme Court? That's a – that's an excellent question, Your Honor. And without – That's what we get paid to do. Right. What I would say is that I would go and I would look in – I would look in the Nevada revised statutes and see which of the statutes of limitation would be most applicable, because there's certainly nothing procedural under the, you know, the Judicial Commission or under the Standing Committee that would say that you had a certain period of time. Now, if I was the – if I was the appellant, what I would say is that because this is a scenario where they are – you're in the midst of a campaign and the determination would be one, I would ask for a timely review. You'd probably do it right away. Okay. Thank you for your argument, counsel. Thank you.  Yes, please. It's interesting to note the opposition now taking a different position, saying that Judge Luke had a right to appeal. Yet on page 25 in their brief they said, The Standing Committee rules do not provide for any appeal or other review of a panel determination. Also – so that shows you that they knew when they wrote their brief there was no right to any review. In order to have, quote, the Rooker-Feldman reply, you have to have due process at these particular proceedings. Due process was not administered in this case. Therefore, Rooker-Feldman does not, in fact, apply. Interesting. Neither Mr. Luke nor the opposition, when we filed the lawsuit, ever even discussed the Rooker-Feldman. This came about as a result of District Judge Ezra, who started talking about the Rooker-Feldman. Everyone – we all figured, you know, we could hear the – have the case heard. And actually, Judge Ezra said that he was going to address, quote, the canon as applied to Mr. Luke in reference to the word convicted, yet he never did. Also, it's important to note that the Standing Committee's decision never even addressed Judge Luke's constitutional free speech issue. Bottom line, the Rooker-Feldman doctrine does not prevent this Court from addressing the merits of the case. And as Justice Bybee pointed out, which I was unaware, I knew that the word convicted could be used other than a criminal context, but I didn't know what you were saying about the Constitution. So clearly, it shows that, again, the Standing Committee's decision is incorrect, and it violates his right to free speech. We can't allow that to happen. We cannot allow that to happen in the case. And since he did not get due process, we must go to the federal system. And in answer to your question on the mandamus, in the state of Nevada, all lawyers know that you have no right to an appeal unless the statute authorizes it. It doesn't authorize it. And you cannot use a writ of mandamus. What's the difference between a mandamus and an appeal? The Nevada Supreme Court does not allow you to use a writ of mandamus as a substitute for an appeal. So the argument would be is you have no right to an appeal, and what you're asking us to do is to take a writ of mandamus and substitute it as an appeal. The only – Right. But if you don't have a right for an appeal, how could you substitute a writ of mandamus for something you don't have? That's correct. And that's what the Nevada Supreme Court would say. And I've only been up there 75 times arguing before that court, and I'm very well aware of writs of mandamus and how they operate. Okay. Thank you for your argument, counsel. Thank you very much. And I apologize for raising my voice, but earlier on, Mr. Wong had indicated you had problems picking things up. And I do get a little excited because I really do love the law, and I believe in my position. We understand. Thank you very much. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is –
judges: Hawkins, Silverman, Bybee